**Jamin S. Soderstrom, Bar No. 261054**
**SODERSTROM LAW PC**
**3 Park Plaza, Suite 100**
**Irvine, California 92614**
**Tel:   (949) 667-4700**
**Fax:   (949) 424-8091**
**jamin@soderstromlawfirm.com**

*Counsel for Plaintiff Lionel Harper*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIONEL HARPER, <br><br> Plaintiff, <br><br> v. <br><br> CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., and DOES 1 through 25, <br><br> Defendants. | Case No. _____ <br><br><br> **COMPLAINT** <br><br><br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Lionel Harper brings this action against Defendants Charter Communications, LLC, Charter Communications, Inc., and Does 1 through 25 (collectively, "Charter"), and alleges as follows:

## JURISDICTION

1. The Court has original jurisdiction over this action because Harper and Charter are citizens of different states and the amount placed in controversy by Harper's claims exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The Court has supplemental jurisdiction over the state law claims raised in this action under 28 U.S.C. § 1367.

## PARTIES

2. Harper is a resident of Redding, California, and he has been domiciled in California and a citizen of the United States at all times relevant to this action. Harper worked as a salesperson for Charter in California from September 2017 to March 2018.

3. Charter Communications, LLC is a limited liability company doing business in California and is a joint employer of Harper. Based on the citizenship of its members, Charter Communications, LLC is a citizen of Delaware, Missouri, and New York. Charter Communications, LLC is not a citizen of California.

4. Charter Communications, Inc. is a corporation doing business in California and is a joint employer of Harper. Charter Communications, Inc.'s state of incorporation is Delaware and its principal place of business is in Connecticut. Charter Communications, Inc. is a citizen of Delaware and Connecticut. Charter Communications, Inc. is not a citizen of California

5. Harper does not know the true names or capacities, whether individual or corporate, of defendants sued as Does 1 through 25 and, for that reason, sues such defendants under fictitious names. Harper is informed and believe that each Doe defendant was responsible in some respect for the violations alleged herein and proximately caused Harper to be subject to illegal employment practices and to suffer harm, that each Doe respondent controlled his work and was a joint employer, and that one or more Doe responses was an officer, director, or managing agent. Harper will seek leave to amend as and when the true names and capacities of each Doe defendants become known.

///

///

# EXHAUSTION

6. On December 31, 2018, Harper complied with the requirements of California's Fair Employment and Housing Act, Cal. Gov. Code § 12900 *et seq.* ("FEHA"), by filing a complaint with and obtaining a right to sue from California's Department of Fair Employment and Housing ("DFEH"). Exhibit 1. Charter accepted service of Harper's right to sue on January 3, 2019. Harper has complied with FEHA's exhaustion requirements and/or Charter has waived any such requirements.

7. On April 30, 2019, at Charter's insistence and based on an agreement between Harper and Charter requiring the parties to arbitrate any and all employment-related disputes using JAMS, Harper filed a demand for arbitration with JAMS and brought the claims alleged in this action against Charter. Harper served the demand on Charter on May 1, 2019 and promptly paid his share of JAMS's required filing fee. Charter did not pay its share of the required filing fee, however, and it did not submit an objection letter stating its reasons for not paying for or proceeding in the arbitration with JAMS. Despite numerous requests from JAMS over the next four months, Charter continued to refuse to pay its share of the arbitration costs and fees as required by the parties' agreement. Because Harper cannot afford to pay Charter's share of JAMS's required filing fees and arbitrator retainer (which exceed $6,000 and only cover preliminary arbitration matters), on September 4, 2019, Harper withdrew his claims from arbitration. Charter materially breached the parties' arbitration agreement, is in default under that agreement, and waived any right to arbitrate the claims and issues raised in this action. Charter's refusal to abide by the parties' agreement denied Harper a speedy, efficient, informal, and affordable arbitration.

8. Harper exhausted all procedural, statutory, and contractual obligations he has or may have had, and he is entitled to pursue all of the claims raised in this action in court.

# BACKGROUND

9. Charter markets and sells residential and business Internet, television, and phone services in California and nationwide. Charter hired Harper as a salesperson in September 2017. Harper worked for Charter as a salesperson in California from September 2017 to March 2018.

10. <u>Harper Takes Paid Leave based on Medical Condition</u>. Around January 2018, Harper developed acute pain in his lower back. He visited a walk-in clinic and he was advised by a medical professional to take several days off of work, which he did. While Harper did not disclose the specific

details of his medical condition to Charter at that time, he did advise his managers at Charter that he was experiencing a painful medical condition which was his reason for taking sick, personal, and vacation time in and around January and February 2018. Most of Harper's communications with Charter personnel were through his work email and work cell phone.

11. During the time period Harper was taking sick, personal, and vacation leave in connection with his medical condition, he continued to perform some work from home (e.g., customer communications) and he would perform catch-up work on the weekends when he was able. He did not stop performing his duties during this time period and he remained able to perform the essential functions of his job. He did not request to be placed on formal medical leave and he still had at least several hours of paid leave time available to him. Apart from taking approved, paid leave, Harper continued to work through February 14, 2018.

12. <u>Charter Placed Harper on Involuntary Unpaid Leave</u>. Around February 14, 2018, Harper's manager, via email, placed him on involuntarily unpaid leave based on his medical condition. He was told that he needed to contact Charter's third-party administrator before he could return to work. On February 26, 2018, Charter's third-party administrator sent Harper a letter asking him to respond by March 13, 2018 and informed Harper that if he failed to respond by March 13, 2018, he may be subject to disciplinary action or termination. A different letter dated March 2, 2018 asked him to contact Charter's human resources department by March 9, 2018.

13. In March 2018, Harper tried to contact Charter and the third-party administrator in writing and via telephone multiple times concerning instructions on what was needed for him to be taken off of involuntary unpaid leave and for him to return to work. He was ready, willing, and able to return to work, and he was capable of performing the essential functions of his job, at least with a reasonable accommodation. He emailed the Charter human resources professional who had sent him the March 2 letter several times but never heard back. He also did not receive any responses to his written and telephone communications from any of Charter's or its third-party administrator's personnel.

14. <u>Charter Terminates Harper for Alleged Job Abandonment</u>. The next time Harper heard from Charter was when he received two letters dated March 13, 2018 informing him that Charter had formally terminated his employment as of March 12, 2018. One letter terminated his employment and

the other letter accused him of failing to respond to his manager with respect to returning company equipment and threatened to involve law enforcement for alleged theft of company property.

15. Harper had been complying with the instructions he was given by Charter and its third-party administrator, but they were not responding to him. When Harper received the termination letter and the letter threatening of potential criminal action from Charter, he contacted Charter again and asked it to reconsider his termination. Charter refused to reconsider the termination and refused to reinstate Harper even though the termination letter said Harper was still eligible for future employment with Charter.

16. <u>Harper is Unemployed for a Year</u>. In April 2018, following his termination, Harper sought unemployment benefits. Charter opposed his request, alleging that he voluntarily quit and abandoned his job. Harper contacted Charter asking why it would oppose his request when he had evidence showing he had not abandoned his job and that Charter was not returning his calls. Charter did not respond to him. When Harper appealed the denial of benefits and submitted evidence that he had been communicating with Charter and the third-party administrator and that they were not responding to his communications, the denial was reversed and he was granted unemployment benefits based on a finding that Harper was attempting to return to work but was prevented from doing so by Charter.

17. Harper applied for more than 100 jobs over the next year. He had numerous interviews but no success finding a new job. In March 2019, Harper was finally able to secure part-time work at a reduced hourly rate, but he still has been unable to secure full-time work.

18. Charter's conduct caused and is continuing to cause Harper to suffer economic and noneconomic harm, including past and future lost compensation and benefits, lost career opportunities, injury to reputation, and emotional distress such as suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, anger, chagrin, disappointment, embarrassment, humiliation, and shame.

**CAUSES OF ACTION**

<u>**Count One**</u>

**Discrimination and Wrongful Discharge under FEHA**

19. Harper incorporates all prior paragraphs.

///

20. FEHA prohibits employers from refusing to hire, discharging, or otherwise discriminating against employees in compensation or in terms, conditions, or privileges of employment because of their physical disabilities. Cal. Gov. Code § 12940(a).

21. Harper started suffering from a physical medical condition in or around January 2018. Charter learned about Harper's medical condition and Charter thereafter discriminated against and discharged him in connection with his medical condition. If Harper had not been suffering from his medical condition or if he had not disclosed his medical condition to Charter, he would not have been placed on unpaid leave and he would not ultimately have been terminated.

22. Charter discriminated and wrongfully discharged Harper based on his medical condition in violation of FEHA. Charter's conduct caused Harper to suffer harm.

23. Harper has a right to recover economic and noneconomic damages, attorneys' fees, and costs in amounts to be determined at trial. Harper also seeks and is entitled to recover injunctive relief in the form of reinstatement of his employment to the same or a similar position.

24. Pursuant to California Civil Code section 3294, Charter's wrongful conduct was malicious, oppressive, fraudulent, despicable and not to be tolerated by civil society and was known, authorized, ratified, and/or perpetrated by its managing agents, officers or directors, entitling Harper to recover punitive and exemplary damages in amounts to be determined at trial.

**Count Two**

**Failure to Make a Reasonable Accommodation under FEHA**

25. Harper incorporates all prior paragraphs.

26. FEHA prohibits employers from failing to make reasonable accommodations for the known physical disabilities of their employees. Cal. Gov. Code § 12940(m).

27. Harper requested and continued trying to request a reasonable accommodation from Charter related to his known medical condition in February and March 2018. Charter failed to consider and failed to grant a reasonable accommodation to Harper. Instead, Charter discriminated against Harper and ultimately terminated Harper's employment.

28. Charter's failure and refusal to grant Harper a reasonable accommodation related to his medical condition was in violation of FEHA. Charter's conduct caused Harper to suffer harm.

29. Harper has a right to recover economic and noneconomic damages, attorneys' fees, and costs in amounts to be determined at trial. Harper also seeks and is entitled to recover injunctive relief in the form of reinstatement of his employment to the same or a similar position.

30. Pursuant to California Civil Code section 3294, Charter's wrongful conduct was malicious, oppressive, fraudulent, despicable and not to be tolerated by civil society and was known, authorized, ratified, and/or perpetrated by its managing agents, officers or directors, entitling Harper to recover punitive and exemplary damages in amounts to be determined at trial.

### Count Three

### Failure to Engage in a Timely and Good Faith Interactive Process under FEHA

31. Harper incorporates all prior paragraphs.

32. FEHA prohibits employers from failing to engage in a timely and good faith interactive process with employees to determine effective reasonable accommodations. Cal. Gov. Code § 12940(n).

33. Charter placed Harper on involuntary, unpaid leave related to his known medical condition in February 2018. Thereafter, Harper contacted Charter and its third-party administrator multiple times prior to his termination in March 2018, but Charter and its administrator failed and refused to engage in a timely and good faith interactive process to determine what accommodations were needed and available. Instead, Charter and its administrator failed to respond to Harper's inquiries and requests and Charter terminated Harper by letter and threatened him with criminal action for alleged "theft" of company property. When Harper tried to convince Charter to reconsider the termination or to reinstate him to his position, Charter refused even though Charter had stated that Harper was still eligible for future employment with Charter. Charter later opposed Harper's request for unemployment benefits.

34. Charter failed and refused to engage in a timely and good faith interactive process related to Harper's known medical condition and related to available reasonable accommodations. Charter's failure and refusal violated FEHA. Charter's conduct caused Harper to suffer harm.

35. Harper has a right to recover economic and noneconomic damages, attorneys' fees, and costs in amounts to be determined at trial. Harper also seeks and is entitled to recover injunctive relief in the form of reinstatement of his employment to the same or a similar position.

36. Pursuant to California Civil Code section 3294, Charter's wrongful conduct was malicious, oppressive, fraudulent, despicable and not to be tolerated by civil society and was known, authorized, ratified, and/or perpetrated by its managing agents, officers or directors, entitling Harper to recover punitive and exemplary damages in amounts to be determined at trial.

### Count Four

### Discrimination on the Basis of Age under FEHA

37. Harper incorporates all prior paragraphs.

38. FEHA prohibits employers from refusing to hire, discharging, or otherwise discriminating against employees in compensation or in terms, conditions, or privileges of employment because of their age. Cal. Gov. Code § 12940(a).

39. Harper was over 40 years old in 2018 when he took leave for a medical condition and when Charter placed him on involuntary, unpaid leave and ultimately terminated his employment related to his leave and his known medical condition.

40. Charter was aware of Harper's age when it engaged in this conduct.

41. Charter would not have treated a younger employee in the same manner.

42. Charter discriminated and wrongfully discharged Harper based on his age in violation of FEHA. Charter's conduct caused Harper to suffer harm.

43. Harper has a right to recover economic and noneconomic damages, attorneys' fees, and costs in amounts to be determined at trial. Harper also seeks and is entitled to recover injunctive relief in the form of reinstatement of his employment to the same or a similar position.

44. Pursuant to California Civil Code section 3294, Charter's wrongful conduct was malicious, oppressive, fraudulent, despicable and not to be tolerated by civil society and was known, authorized, ratified, and/or perpetrated by its managing agents, officers or directors, entitling Harper to recover punitive and exemplary damages in amounts to be determined at trial.

### Count Five

### Retaliation under FEHA

45. Harper incorporates all prior paragraphs.

///

46. FEHA prohibits employers from retaliating or otherwise discriminating against a person for requesting an accommodation. Cal. Gov. Code § 12940(m)(2).

47. Harper engaged in protected activity when he took approved leave in connection with his medical condition and when he later tried to seek an accommodation and engage in the good faith interactive process to no avail. Charter subjected him to involuntary unpaid leave, then termination, and later bad faith opposition to his request for unemployment benefits. Charter engaged in this conduct based on Harper's disclosure of his medical condition and his unsuccessful attempts to obtain an accommodation and return to work.

48. Charter retaliated against Harper because he engaged in protected activities. Charter's conduct was in violation of FEHA and it caused Harper to suffer harm.

49. Harper has a right to recover economic and noneconomic damages, attorneys' fees, and costs in amounts to be determined at trial. Harper also seeks and is entitled to recover injunctive relief in the form of reinstatement of his employment to the same or a similar position.

50. Pursuant to California Civil Code section 3294, Charter's wrongful conduct was malicious, oppressive, fraudulent, despicable and not to be tolerated by civil society and was known, authorized, ratified, and/or perpetrated by its managing agents, officers or directors, entitling Harper to recover punitive and exemplary damages in amounts to be determined at trial.

## Count Six

### Wrongful Termination in Violation of Public Policy

51. Harper incorporates all prior paragraphs.

52. Charter discharged Harper in violation of important and well-established public policies that are set forth in various statutes and Constitutional provisions, including but not limited to California Government Code sections 12920, 12940, 12948, and 12926 (employment discrimination and retaliation) and California Constitution Article I, § 8 (employment discrimination).

53. Charter discriminated against and wrongfully discharged Harper based on his age and a known medical condition in violation of public policy. Charter's conduct caused Harper to suffer harm.

///

///

54. Harper has a right to recover economic and noneconomic damages, attorneys' fees, and costs in amounts to be determined at trial. Harper also seeks and is entitled to injunctive relief in the form of reinstatement of his employment to the same or a similar position.

55. Pursuant to California Civil Code section 3294, Charter's wrongful conduct was malicious, oppressive, fraudulent, despicable and not to be tolerated by civil society and was known, authorized, ratified, and/or perpetrated by its managing agents, officers or directors, entitling Harper to recover punitive and exemplary damages in amounts to be determined at trial.

### Count Seven

### Violation of Investigative Consumer Reporting Agencies Act ("ICRAA")

56. Harper incorporates all prior paragraphs.

57. The ICRAA, Cal. Civ. Code § 1786 *et seq.*, has certain notice and consent requirements for employers who conduct background checks on their potential or current employees for employment purposes. The purpose of the requirements is to preserve and protect employees' and applicant's privacy rights and make sure they give fully informed consent whenever a background check is requested.

58. Charter failed to satisfy the ICRAA's notice and consent requirements set forth under Cal. Civ. Code § 1786.16 when it requested that Harper authorize a background check in connection with this application for employment. Charter failed to provide a disclosure that was clear and conspicuous, failed to use a document that consisted solely of the disclosure, failed to identify all required information concerning the consumer reporting agency conducting the investigation, and failed to obtain authorization in writing.

59. Charter also failed to comply with the privacy and use requirements when it filed the information it obtained in the background check publicly in court without authorization.

60. Because Charter failed to comply with the ICRAA's requirements, Harper is entitled to recover the greater of his actual damages or statutory damages in the amount of $10,000, reasonable attorneys' fees, costs, and punitive damages because Charter's violation was grossly negligent or willful. Cal. Civ. Code § 1786.50(a).

///

///

### Count Eight

### Violation of California's Unfair Competition Law ("UCL")

61. Harper incorporates all prior paragraphs.

62. California Business and Professions Code section 17200 ("UCL") defines unfair competition as an "unlawful" or "unfair" business act or practice.

63. Charter is a "person" under UCL section 17021.

64. Charter has engaged and continues to engage in business practices that are both unlawful and unfair and that therefore violate the UCL.

65. Charter's violations of FEHA, the common law, and the ICRAA as described above also constitute unlawful acts and practices prohibited by the UCL. These violations also independently constitute unfair acts and practices under the UCL.

66. Harper seeks restitution and restitutionary disgorgement of any and all profits Charter obtained at his expense in connection with its unlawful and unfair business practices. Harper also seeks individual and public injunctive and declaratory relief that compels Charter to stop their unlawful and unfair practices for all similarly situated employees and future employees and, specifically but without limitation, to fix their procedures with respect to placing employees on leave and terminating employees and to fix their acquisition, disclosure, and use practices concerning employee background checks.

### PRAYER FOR RELIEF

Harper prays for the following relief:

A. an award of damages based on economic harm that he has suffered and continues to suffer, including but not limited to past and future lost wages, in an amount to be proved at trial;

B. an award of damages based on noneconomic harm that he has suffered and continues to suffer, in an amount to be proved at trial;

C. an award of punitive or exemplary damages;

D. an award of restitution and restitutionary disgorgement;

E. pre-judgment and post-judgment interest as allowed by law;

F. an award of actual or statutory damages and punitive damages under the ICRAA;

G. individual and public equitable, injunctive, and declaratory relief to remedy Charter's

violations of California law, including but not limited to an order enjoining Charter from continuing to engage in its unlawful practices, requiring Charter to fix its broken practices, and reinstating Harper to the same or a similar position;

      H.    reasonable attorneys' fees and costs under FEHA and/or under Cal. Code Civ. Proc. § 1021.5; and

      I.    such additional and further relief as this Court may deem just and proper.

Dated: September 4, 2019              SODERSTROM LAW PC

                                        By: */s/ Jamin S. Soderstrom*

                                        *Counsel for Plaintiff Lionel Harper*

**JURY TRIAL DEMANDED**

Harper demands a trial by jury of all issues triable by jury.

Dated: September 4, 2019                    SODERSTROM LAW PC

By: /s/ Jamin S. Soderstrom

*Counsel for Plaintiff Lionel Harper*