UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| LIONEL HARPER,<br><br>       Plaintiff,<br><br>   v.<br><br>CHARTER COMMUNICATIONS, LLC,<br>CHARTER COMMUNICATIONS, INC.,<br>and DOES 1 through 25,<br><br>       Defendants. | No. 2:19-cv-01749 WBS DMC<br><br>ORDER RE: MOTION TO COMPEL<br>ARBITRATION AND DISMISS OR<br>STAY JUDICIAL PROCEEDINGS |

----oo0oo----

Plaintiff Lionel Harper brought this action against defendants Charter Communications, LLC and Charter Communications, Inc. (collectively "Charter"), alleging, inter alia, violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900 et seq. Before this court is Charter's motion to compel arbitration and dismiss or stay judicial proceedings. (Mot. to Compel Arbitration (Docket No. 10).)

I.    Facts & Procedural History

1

| | |
|---|---|
| 1 | Plaintiff worked for Charter as a salesperson in |
| 2 | California from September 2017 to March 2018.  (Compl. ¶ 9 |
| 3 | (Docket No. 1).)  Upon hire, plaintiff signed an agreement to |
| 4 | arbitrate "any and all claims, disputes, and/or controversies |
| 5 | between [plaintiff] and Charter arising from or related to |
| 6 | [plaintiff's] employment with Charter" before a single arbitrator |
| 7 | from the Judicial Arbitration and Mediations Services, Inc. |
| 8 | ("JAMS Arbitration Agreement").  (Decl. of Chance Cassidy |
| 9 | ("Cassidy Decl."), Ex. B (Docket No. 10-3); Decl. of Lionel |
| 10 | Harper ("Harper Decl.") ¶ 2 (Docket No. 22-1).)  According to the |
| 11 | agreement, JAMS Employment Arbitration Rules & Procedures and |
| 12 | JAMS Policy on Employment Arbitration Minimum Standards of |
| 13 | Procedural Fairness would govern the arbitration of any claims |
| 14 | between plaintiff and Charter.  (Cassidy Decl., Ex. B.)  Under |
| 15 | these rules, Charter would "bear all costs unique to arbitration, |
| 16 | except for the Case Initiation Fee, which would be split between |
| 17 | [plaintiff] and Charter."  (Cassidy Decl., Ex. B.)  The agreement |
| 18 | provided the arbitrator's decision would be "final and binding" |
| 19 | on both parties.  (Cassidy Decl., Ex. B.) |
| 20 | On October 6, 2017, Charter adopted a new arbitration |
| 21 | agreement that required arbitration of claims via "Solution |
| 22 | Channel," Charter's employment-based legal dispute resolution |
| 23 | program.  (See Decl. of John Fries ("Fries Decl."), Ex. A (Docket |
| 24 | No. 10-2).)  Unlike the JAMS Arbitration Agreement, the Solution |
| 25 | Channel Arbitration Agreement provided for arbitration under the |
| 26 | rules of the American Arbitration Association and instituted an |
| 27 | internal review process before claims proceeded to arbitration. |
| 28 | (See generally Fries Decl., Ex. C.)  Charter announced this |

change via e-mail to all active non-Union employees below the level of Executive Vice President, plaintiff among them. (Fries Decl. ¶ 5, Ex. E.) The Solution Channel announcement email notified employees that "[b]y participating in Solution Channel, [employees] and Charter both waive the right to initiate or participate in court litigation." (Fries Decl., Ex. A.) Additionally, the announcement warned employees that they would be enrolled into Solution Channel unless they "opt[ed] out of participating in Solution Channel within the next 30 days." (Fries Decl., Ex. A.) The email directed employees interested in opting out to go to Panorama, Charter's intranet site, for more information. (Fries Decl., Exs. A, B.) Plaintiff did not opt out. (Fries Decl. ¶ 21.)

Around January 2018, Harper allegedly developed acute pain in his lower back and was advised by a medical professional to take several days off work. (Compl. ¶ 10.) Plaintiff contends he continued to work from home during his leave. (Id. ¶ 11.) On February 14, 2018, plaintiff's manager placed plaintiff on involuntarily unpaid leave. (Id. ¶ 12.) Representatives from Charter's third-party administrator and human resources department contacted plaintiff, but plaintiff's attempts to respond allegedly went ignored. (Id. ¶¶ 12-13.) Charter terminated plaintiff on March 12, 2018. (Id. ¶ 14.) Plaintiff remained unemployed until March 2019, at which point he was able to secure part-time work at a reduced hourly rate. (Id. ¶ 17.)

On November 19, 2018, plaintiff filed a Demand for Arbitration against Charter alleging various wage and hour claims pursuant to the JAMS Arbitration Agreement. (Decl. of Kathryn

3

McGuigan ("McGuigan Decl."), Ex. 1 (Docket No. 10-1).) Although plaintiff had been enrolled in the Solution Channel Arbitration Agreement in October 2017, at all relevant times Charter relied upon the JAMS Arbitration Agreement as binding on the parties. Harper v. Charter Commc'ns, LLC, 2:19-cv-902-WBS-DMC, 2019 WL 3683706, at *8 (E.D. Cal. Aug. 6, 2019) (hereinafter Harper I). Accordingly, the parties proceeded through the JAMS process, and the JAMS arbitrator issued an Order Dismissing Arbitration after finding she had no jurisdiction over the action on April 25, 2019. (McGuigan Decl., Ex. 2.)

Following the arbitrator's order in his wage and hour claim dispute, plaintiff filed a separate Demand for Arbitration with JAMS alleging eight additional employment-related claims against Charter, including (1) discrimination and wrongful discharge under FEHA; (2) failure to make a reasonable accommodation under FEHA; (3) failure to engage in a timely and good faith interactive process under FEHA; (4) age discrimination under FEHA; (5) retaliation under FEHA; (6) wrongful termination in violation of public policy; (7) violation of Investigative Consumer Reporting Agencies Act, Cal. Civ. Code § 1786; and (8) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, (collectively, "FEHA claims") on April 30, 2019.[1] (McGuigan Decl., Ex. 3.) Pursuant to the JAMS

---

[1] Plaintiff complied with FEHA's exhaustion requirements by filing a complaint with California's Department of Fair Employment and Housing and obtaining a right to sue letter on December 31, 2018. (Compl. ¶ 6; see also McGuigan Decl., Ex. 3 (incorporating plaintiff's second Demand for Arbitration in full, including a copy of the right to sue letter at Ex. 2).) Charter accepted service of plaintiff's right to sue on January 3, 2019.

4

Arbitration Agreement, plaintiff paid his share of the Case Initiation Fee to bring his FEHA claims to arbitration. (Decl. of Jamin Soderstrom ("Soderstrom Decl.") ¶ 8 (Docket No. 22-2).) Plaintiff and JAMS then asked Charter to pay its share of the fees so arbitration could commence. (Soderstrom Decl. ¶ 9, Exs. 6-9.) Charter refused. (Id.)

After the JAMS arbitrator had rendered her decision as to plaintiff's wage and hour claims but before arbitration had commenced over plaintiff's FEHA claims, Charter attempted to compel plaintiff to arbitrate his wage and hour claims under the Solution Channel Arbitration Agreement. (McGuigan Decl., Exs. 4-5.) Plaintiff refused, and instead moved to confirm the arbitrator's finding of non-arbitrability in this court. (See Mot. to Confirm Arbitration Award and Enter Judgment in Harper v. Charter Commc'ns, LLC, 2:19-cv-00902-WBS-DMC (Docket No. 9).) This court affirmed the arbitrator's finding that the wage and hour claims were not arbitrable on August 6, 2019. See Harper I, 2019 WL 3683706, at *8.

However, plaintiff's FEHA claims remained unresolved before JAMS because Charter had still not paid its portion of the filing fee. After this court's confirmation of the arbitration award, JAMS contacted the parties on August 7, 2019 and advised them if JAMS did not receive the funds by August 15, plaintiff would "ha[ve] the option to pay to proceed" on his FEHA claims. (Soderstrom Decl. ¶ 9, Ex. 7.) On August 29, 2019, JAMS demanded payment from Charter one final time, threatening to close the

---

(Id.)

case's file on September 16, 2019 if it did not receive full payment. (McGuigan Decl., Ex. 6.)  Unable to pay the JAMS fees on his own, plaintiff voluntarily withdrew his Demand for Arbitration on his FEHA claims on September 4, 2019.  (McGuigan Decl., Ex. 7.)  Plaintiff proceeded to file those claims before this court.  (See Compl.)  Charter now seeks to compel plaintiff to arbitrate his FEHA claims under the Solution Channel Arbitration Agreement.  (Docket No. 10.)

II. Motion to Compel Arbitration

    A.    Arbitration Agreement Applicable to FEHA Claims

In this court's previous order regarding plaintiff's wage and hour claims against Charter, the court found the JAMS Arbitration Agreement governed the dispute because the parties agreed to its use. Harper I, 2019 WL 3683706, at *4.  This agreement effectively acted as a novation, replacing the parties' obligations under the Solution Channel Arbitration Agreement with those set forth under the JAMS Arbitration Agreement. Id. at *6-8.  Plaintiff contends that the JAMS Arbitration Agreement should also govern the adjudication of his FEHA claims.  (Soderstrom Decl. ¶ 13-14.)  The court disagrees.

Charter fully arbitrated plaintiff's wage and hour claim in accordance with the JAMS Arbitration Agreement, and at all relevant times adhered to its terms to inform the resolution of plaintiff's claim. See Harper I, 2019 WL 3683706, at *4.  But here, Charter did not engage with plaintiff's FEHA claims in a similar way.  An arbitrator did not render a decision; indeed, arbitration had not yet commenced.  Plaintiff claims he did not bring his FEHA claims in conjunction with the wage and hour

6

action because the arbitrator said he could pursue the FEHA claims in a separate arbitration and Charter did not object. (Soderstrom Decl. ¶ 6.) But that does not change the fact that these are two separate actions. The facts supporting the novation this court found in the wage and hour action are wholly absent here. Charter did not engage in any conduct that was inconsistent with its right to arbitrate these claims under the Solution Channel Arbitration Agreement, and plaintiff suffered no prejudice from Charter's purported conduct other than a few months delay.[2] Accordingly, the Solution Channel Arbitration Agreement applies to plaintiff's FEHA claims.

B. Validity of Solution Channel Arbitration Agreement

Charter contends this court is required to compel plaintiff's claims to arbitration because the Solution Channel Arbitration Agreement's terms are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (Fries Decl., Ex. C at 5 ¶ R.) The FAA "limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" Munro v. Univ. of S. Cal., 896 F.3d 1088, 1091 (9th

---

[2] Plaintiff argues that he has been prejudiced insofar as the adjudication of his claims has been delayed seven months and he has incurred extraneous filing fees and attorney's fees. (Opp. to Mot to Compel Arbitration at 14; Soderstrom Decl. ¶ 16.) In so doing, plaintiff relies on Brown v. Dillard's, Inc., 430 F.3d 1004, 1012-13 (9th Cir. 2005). However, in Brown, Dillard's breached its arbitration agreement with its employee by refusing to participate in the arbitration processes both parties had consented to use. Id. at 1010. Here, while Charter refused to participate in the outdated JAMS process, it is attempting to arbitrate under the Solution Channel Agreement. Brown is therefore inapposite.

7

Cir. 2018) (internal citations omitted). If the determination is in the affirmative on both counts, the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Id. (citing Chrion Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)). It is undisputed that the Solution Channel Arbitration Agreement encompasses plaintiff's FEHA claims. (Fries Decl., Ex. C, 1 ¶ B(1).) Consequently, the court must consider only whether a valid agreement to arbitrate exists.

"The party seeking arbitration bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1005 (9th Cir. 2010) (citation omitted). "Arbitration is a matter of contract." Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014) (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (internal modifications omitted)). State contract law determines whether the arbitration agreement is valid. Id. In California, the essential elements of contract are: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. Cal. Civ. Code § 1150. Plaintiff argues defendants cannot compel arbitration under the Solution Channel Arbitration Agreement because plaintiff never consented to the agreement and the agreement itself is unconscionable.

8

1.  Adequate Notice/Consent

Plaintiff argues the Solution Channel Arbitration Agreement is not valid because he did not have adequate notice of the agreement, and therefore he could not consent to it. (Opp. to Mot. to Compel Arbitration at 15-20 (Docket No. 22).) However, it is undisputed that Charter sent, and plaintiff received, information regarding the Solution Channel Arbitration Agreement, which explicitly warned employees that their inaction would result in enrollment in the program. (Fries Decl., Ex. A.) The Ninth Circuit has found recipients of similar arbitration agreements impliedly consented to be bound by them if they did not opt out within the designated time. See Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1074 (9th Cir. 2014) ("By not opting out within the 30-day period, [employee] became bound by the terms of the arbitration agreement."); Circuit City Stores, Inc. v. Ahmed, 283 F.3d 1198, 1200 (9th Cir. 2002) (finding 30-day window to opt out of automatic enrollment in an arbitration agreement was "meaningful", "non-adhesive", and "lacked any other indicia of procedural unconscionability").[3]

---

[3] In both Johnmohammadi and Circuit City, the employees received notice of their respective employer's arbitration agreements and were advised they would be automatically enrolled in the program if they failed to opt out. See 775 F.3d at 1074; 283 F.3d at 1199. Both agreements were upheld because the terms were clear and unambiguous, and neither employer conditioned the employee's continued employment on signing. See 775 F.3d at 1074 ("she made a fully informed and voluntary decision . . . no threats of termination or retaliation were made to influence her decision"); 283 F.3d at 1199 ("[i]f Ahmed had decided to opt-out of the arbitration program, he would have been allowed to keep his job and not participate in the program."). Plaintiff asserts the opt out right "is hardly meaningful when Charter still requires mandatory individual arbitration" under the JAMS agreement. (Soderstrom Decl. ¶ 17.) However, plaintiff

9

Indeed, other district courts have applied that same rationale to this very policy. See, e.g., Prizler v. Charter Commc'ns, LLC, No. 3:18-cv-1724-L-MSB, 2019 WL 2269974, at *3 (S.D. Cal. May 28, 2019). Accordingly, plaintiff's arguments that he did not consent to the Solution Channel Arbitration Agreement fail.

2. Unconscionability

Plaintiff also argues that the Solution Channel Arbitration Agreement is unconscionable, and therefore unenforceable. Under California law, the court must determine unconscionability at the time the contract was formed. Sonic-Calabasas A, Inc. v. Moreno, 57 Cal. 4th 1109, 1134 (2013). A court will not enforce an otherwise valid contract if it is unconscionable. Armendariz v. Found. Health Psychcare Servs. Inc., 24 Cal. 4th 83, 114 (2000). However, "[t]he prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract" because "[a]rbitration is favored . . . as a means of resolving disputes." Id. at 114-15. Accordingly, courts require evidence of both types of unconscionability to overcome the state's policy in favor of arbitrability. Id. These two elements need not both be present

---

consented to be bound by the JAMS agreement upon his hire. Presenting arbitration agreements on a "take it or leave it basis" is "not enough, by itself, to render the agreement unenforceable." Moreno v. Banamex USA, No. CV 14-3049 PSG (PLAx), 2014 WL 12534772, at *5 (C.D. Cal. June 20, 2014) (citing Lagatree v. Luce, Forward, Hamilton & Scripps LLP, 74 Cal. App. 4th 1105, 1127 (2d. Dist. 1999) ("[A] compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis.")).

10

in the same degree.  Instead, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable."  Id.

### i. Procedural Unconscionability

"The procedural element generally takes the form of an adhesion contract, which imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Fitz v. NCR Corp., 118 Cal. App. 4th 702, 713 (4th Dist. 2004). While Charter had the superior bargaining power in this situation because it drafted and imposed the Solution Channel Arbitration Agreement, it was not procedurally unconscionable because plaintiff had the opportunity to opt out.  See Kilgore v. KeyBank, Natl. Ass'n, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc) (citing Circuit City, 283 F.3d at 1199-2000).  In Kilgore, the Ninth Circuit found an arbitration agreement binding former students of a failed flight-training school was not procedurally conscionable because the students were empowered to reject the agreement within sixty days of signing and the arbitration clause was "in its own section, clearly labeled, in boldface."  718 F.3d at 1058-59.  Here, the changes to the arbitration agreement were clearly denoted in Charter's email to it employees, in its own paragraph, and the time to opt out accompanied its announcement. (See Fries Decl., Ex. A.)  Accordingly, the agreement is not procedurally unconscionable.

### ii. Substantive Unconscionability

"The substantive element of unconscionability focuses

on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results, that is, whether contractual provisions reallocate risks in an objectively unreasonable or unexpected manner." Baker v. Osborne Dev. Corp, 159 Cal. App. 4th 884, 894 (4th Dist. 2008) (internal quotation marks and citations omitted). Plaintiff claims the Solution Channel Agreement has a "high degree of substantive unconscionability" on multiple grounds. (Opp. to Mot. to Compel Arbitration 26-33.) However, on the whole, plaintiff's claims lack merit.

Plaintiff most notably argues Solution Channel's internal review process is one-sided and permits Charter itself to determine whether a claim is arbitrable. (Opp. to Mot. to Compel Arbitration 26-29.) However, the internal review mechanism specified in the Solution Channel Agreement applies both to Charter and plaintiff. "Claimants" must first file their claims with an internal review process before proceeding to arbitration, and "claimants" include "current employee[s], former employee[s], applicant[s] for employment, or Charter." (Fries Decl., Ex. C.) Both Charter and employees must "acknowledge and attest to the accuracy of the information in the form and then click Submit Claim" to initiate the process -- employees alone are not held to submitting a sworn verification, as plaintiff asserts. (Compare Fries Decl., Ex. C with Opp. to Mot. to Compel Arbitration at 28.)

Furthermore, the Solution Channel Agreement does not permit Charter to conclusively decide whether a claim is arbitrable. Indeed, Solution Channel provides "[i]f [claimants]

are not satisfied with Charter's decision following the internal claim review" they can still "proceed with arbitration of [the] claim," at which point both parties will "jointly select an arbitrator" from a list of five potential arbitrators selected by the American Arbitration Association. (Fries Decl., Ex. C)

Finally, the Solution Channel Agreement provides each party will bear its own attorney's fees regardless of the action brought. (Fries Decl., Ex. C) California courts have found similar provisions unenforceable in FEHA cases. Serpa v. California Surety Investigations, Inc., 215 Cal. App. 4th 695, 709-10 (2d Dist. 2013). However, this provision "does not vitiate the underlying agreement to arbitrate . . . [because] the arbitration agreement is not otherwise permeated by unconscionability." Id. Accordingly, the "the offending provision, which is plainly collateral to the main purpose of the contract," can be severed in conformity with the agreement's severability clause. Id. The Solution Channel Arbitration Agreement is not "permeated" by unconscionability and is therefore enforceable. The court will grant defendant's motion to compel arbitration.

III. Motion to Dismiss or Stay Judicial Proceedings

Because the Solution Channel Arbitration Agreement is enforceable and encompasses plaintiff's claims, the court will stay this action pending arbitration. See 9 U.S.C. § 3.

IT IS THEREFORE ORDERED that defendant's Motion to Compel (Docket No. 10) be, and the same hereby is, GRANTED. IT IS FURTHER ORDERED that judicial proceedings are STAYED pending arbitration.

13

Dated: December 18, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE